**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

JOHN REMPEL, On Behalf of Himself and
All Others Similarly Situated,

        Plaintiff,

        v.

STILLWATER MINING COMPANY,
BRIAN D. SCHWEITZER,
MICHAEL J. MCMULLEN,
MICHAEL S. PARRETT,
GARY A. SUGAR,
GEORGE M. BEE,
PATRICIA E. MERRIN, and
LAWRENCE PETER O'HAGAN,

        Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

    Plaintiff John Rempel ("Plaintiff"), through his undersigned counsel, alleges upon

personal knowledge with respect to himself, and upon information and belief based upon, *inter*

*alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

    1.    This is a stockholder class action brought by Plaintiff on behalf of himself and the

other public stockholders of Stillwater Mining Company ("Stillwater" or the "Company") (other

than Defendants outlined below) against the Company and its Board of Directors (the "Board" or

"Director Defendants") in connection with the December 9, 2016 entry by Stillwater into a

definitive merger agreement (the "Merger Agreement") with Sibanye Gold Limited ("Parent"),

Thor US Holdco Inc., an indirect wholly owned subsidiary of Sibanye ("US Holdco"), and Thor

Mergco Inc., a direct wholly owned subsidiary of US Holdco ("Merger Sub," and together with

Parent and US Holdco, "Sibanye"), pursuant to which Merger Sub will merge with and into

Stillwater, with Stillwater surviving as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Plaintiff asserts claims against Stillwater and the Director Defendants for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S,C. §§78n(a), 78t(a), and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100.

2.      Pursuant to the terms of the Merger Agreement, Stillwater shareholders will receive $18.00 for each share of Stillwater that they own (the "Merger Consideration"). This Merger Consideration is inadequate and undervalues the Company.  It fails to adequately value the Company's recent financial performance and is well below analyst estimates.

3.      The Proposed Transaction is further marred by a flawed process and conflicts of interest, not the least of which is that some of the directors will receive windfall profits not shared by non-insider shareholders. To secure these benefits, the Director Defendants further exacerbated their breaches of fiduciary duty by agreeing to certain deal protection devices in the Merger Agreement that will prevent other bidders from making successful competing offers. These include:

- a termination fee provision whereby the Board agreed that Stillwater would pay Parent a termination fee of $16.5 million if it terminates the Proposed Transaction;

- a strict no-solicitation provision that effectively precludes the Board from attempting to maximize shareholder value by soliciting bids from any other potential acquirer, requires that the Board cease certain existing communications and negotiations after a certain time, and limits the ability of the Board to negotiate a superior proposal with a competing acquirer, thereby prohibiting it from fulfilling its fiduciary duties, in violation of the law; and

- an information rights and matching rights provision that requires the Company to

notify Parent of certain unsolicited competing offers, provide Parent with information

regarding such offers, and negotiate with Parent regarding such offers.

These provisions substantially and improperly limit the Board's ability to investigate and pursue

superior proposals and alternatives and, absent judicial intervention, virtually guarantee the

consummation of the Proposed Transaction.

4.  Finally, the Director Defendants authorized the release of the form PREM14A

Statement filed with the Securities and Exchange Commission (the "SEC") on January 24, 2017,

which contained a preliminary proxy statement for Stillwater stockholders (the "Proxy

Statement" or "Proxy").  In violation of Sections 14(a) and 20(a) of the Exchange Act, the Proxy

Statement contains incomplete and materially misleading information regarding: (i) the process

leading to the Proposed Transaction, (ii) the financial analyses conducted by Merrill Lynch,

Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), financial advisor to Stillwater,

and (iii) the projections used by BofA Merrill Lynch in those analyses.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin

Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Stillwater stockholders before the vote on

the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover

damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and

Section 20(a) of the Exchange Act.

7.      Personal jurisdiction exists over each Defendant either because the Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

**A.      Plaintiff**

9.      Plaintiff is, and at all relevant times was, a continuous shareholder of Stillwater.

**B.      Defendants**

10.      Defendant Stillwater Mining Company (previously defined as "Stillwater") is a corporation organized and existing under the laws of the State of Delaware with its principal executive offices located at 26 West Dry Creek Circle, Suite 400, Littleton, Colorado 80120.

11.      Defendant Brian D. Schweitzer ("Schweitzer") has served as a director and Chairman of the Board of the Company since May 2013.

12.      Defendant Michael J. McMullen ("McMullen") has served as a director of the Company since May 2013 and as President and Chief Executive Officer ("CEO") since December 2013.

13.      Defendant Michael S. Parrett ("Parrett") has served as a director of the Company since May 2009.

14.      Defendant Gary A. Sugar ("Sugar") has served as a director of the Company since August 2012.

15.     Defendant George M. Bee ("Bee") has served as a director of the Company since November 2012.

16.     Defendant Patricia E. Merrin ("Merrin") has served as a director of the Company since March 2013.

17.     Defendant Lawrence Peter O'Hagan ("O'Hagan") has served as a director of the Company since March 2015.

18.     Defendants Schweitzer, McMullen, Parrett, Sugar, Bee, Merrin, and O'Hagan are collectively referred to herein as the "Board" or the "Director Defendants."

**C.    Relevant Non-Parties**

19.     Sibanye Gold Limited (previously defined as "Parent") is a public company organized under the laws of South Africa.

20.     Thor US Holdco Inc. (previously defined as "US Holdco") is a corporation organized and existing under the laws of the State of Delaware and is an indirect wholly owned subsidiary of Parent.

21.     Thor Mergco Inc. (previously defined as "Merger Sub") is a corporation organized and existing under the laws of the State of Delaware and is a direct wholly owned subsidiary of US Holdco.

**CLASS ACTION ALLEGATIONS**

22.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Stillwater (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.    The Class is so numerous that joinder of all members is impracticable. As of December 6, 2016, there were approximately 121,080,187 million outstanding shares of Stillwater common stock.  The actual number of public shareholders of Stillwater will be ascertained through discovery.

25.    Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; (ii) whether the Director Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if the Proposed Transaction is consummated as presently anticipated.

26.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protects the interests of the Class.

27.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### A.    Corporate Background

29.    Stillwater is engaged in the development, extraction, processing, smelting and refining of palladium, platinum, and associated metals ("PGMs"). PGMs are used in a wide variety of applications, including automobile catalysts, fuel cells, hydrogen purification, electronic, jewelry, dentistry, medicine and coinage. The J-M Reef (the Company's flag ship mine) is the only known significant source of PGMs in the United States and the highest-grade PGM deposit known in the world. Stillwater is the only United States minor of PGMs and the largest primary producer of PGMs outside of South Africa and the Russian Federation.

### B.    Process Leading to the Proposed Transaction

30.    In December 2015, Defendant McMullen received an inquiry from Company A regarding a potential merger of equals between Company A and Stillwater.  This single inquiry launched the Company into the sales process that would result in the Proposed Transaction.

31.     Shortly thereafter, in January 2016, Defendant McMullen was again contacted regarding a potential strategic alternative, this time by Neal Froneman, the CEO of Sibanye, with whom Defendant McMullen met on March 1, 2016, along with Christophe Bateman, Stillwater's CFO.   During this meeting, Defendant McMullen communicated to Mr. Froneman that "management believed that it was likely that the holders of a substantial majority of Stillwater's shares would prefer a transaction involving a substantial cash component at a premium to market sufficient to compensate them for potential loss of equity upside."  The Proxy does not disclose any basis for this belief or whether this belief was formed through communications with shareholders.

32.    From March to June 2016, Stillwater had discussions with Company A and Sibanye regarding a potential strategic transaction.   During this period, no non-public

information was exchanged.  In July 2016, Company A withdrew from further discussions and, on July 21, 2016, Sibanye submitted a preliminary, non-binding indication of interest ("IOI) to acquire Stillwater for $15.75 per share. On August 9, 2016, Stillwater and Sibanye entered into a confidentiality agreement, pursuant to which Stillwater provided certain non-public information to Sibanye.

33.    On August 10, 2016, the Board met to discuss other parties that would be reasonably expected to be interested in a strategic transaction involving Stillwater.  Thereafter, and presumably at the Board's direction, Stillwater's management contacted 15 of these parties, all of which were mining companies. Two of these parties (Company B and Company C) later signed confidentiality agreements and were provided access to non-public information. Stillwater also again contacted Company A, but Company A again indicated that it was would not proceed with exploring a potential transaction at that time.  Notably, all of this outreach was performed without the assistance or counsel of a financial advisor.

34.    From mid-August through September 2016, the Company had discussions with and provided non-public information to Companies B and C and Sibanye.  On October 29, 2016, Sibanye communicated that it was hoping to announce a transaction by no later than November 21, 2016.

35.    Finally, around this time, in late October 2016, after the process had been ongoing for more than ten months and the Company had already provided non-public information to the party that would eventually buy it, the Board considered that it might be advisable to hire a financial consultant. In November, the Board retained BofA Merrill Lynch to act as its financial advisor and a separate outside law firm to act as its legal counsel.

36.    Thereafter, BofA Merrill Lynch contacted eight additional potential counterparties, of which only one (Company D) signed a confidentiality agreement. BofA

Merrill Lynch also contacted the 16 parties already previously contacted by Company management.

37.    By December 2016, only Sibanye had communicated that it was wiling to submit a revised IOI (of between $17.50 and $17.75 per share), and no other party ever submitted an IOI to acquire the Company.  On December 2, 2016, the Board reviewed certain projections provided by management for the Company's future operation.  These same projections had been provided to third parties that signed confidentiality agreements and BofA Merrill Lynch.

38.    On December 3, 2016, Sibanye submitted a revised IOI of $18.00 per share, calling this IOI its "final and best price."  Days later, on December 8, 2016, Mr. Froneman disclosed to Defendant McMulllen that Sibanye "had spoken with representatives of Sibanye's two largest shareholders regarding the possible transaction on a confidential basis and that these shareholders, which together owned approximately 29.1% of Sibanye's ordinary shares, had indicated their support for the proposed transaction."  The Proxy does not address whether this communication constituted a breach of Sibanye's confidentiality agreement.

39.    On the same day, the Board approved the Merger Agreement with Sibanye.

C.    **The Proposed Transaction**

40.    On December 9, 2016, Stillwater issued a press release announcing the Proposed Transaction, which provides in pertinent part:

**Sibanye to Acquire Stillwater Mining Company for $2.2 Billion**

*All-cash transaction at $18.00 per share, a 25% premium to Stillwater's 30 day volume-weighted average share price*

**LITTLETON, Colo.,** – December 9, 2016 – Stillwater Mining Company ("Stillwater" or "the Company"; NYSE: SWC) today announced that it has entered into an agreement with Sibanye Gold Limited ("Sibanye"; JSE: SGL; NYSE: SBGL), under which Sibanye will acquire Stillwater for $18.00 per share in cash representing an aggregate enterprise value of $2.2 billion. The $18.00 per share transaction price represents a 61% premium to Stillwater's volume-weighted average share price over the 52 weeks prior to the announcement of the

transaction, a 25% premium to its volume-weighted share price over the 30 trading days prior to the announcement and a 23% premium to its closing share price on December 8, 2016. The transaction also represents a 14.0x multiple of IBES consensus 2017 EBITDA estimate.

Following a thorough review of Stillwater's strategic opportunities, including a process in which over 20 parties were contacted, the Company's Board of Directors has unanimously approved the transaction.

**Mick McMullen, CEO of Stillwater Mining Company, commented**:

"This compelling all-cash transaction delivers immediate value to shareholders and appropriately recognizes the value of Stillwater's high-grade and long-life assets and world-class metallurgical and PGM recycling complex, as well as Stillwater's potential for brown field expansions through the development of our Blitz and Lower East Boulder projects."

"This announcement is a testament to the significant operational and productivity improvements that Stillwater has achieved over the past several years. In particular, Sibanye recognizes the world-class nature of our asset base, our operational excellence, our skilled team, and our strong commitment to the environment and workforce safety. Sibanye has indicated its commitment to maintaining and investing in Stillwater's Montana operations and will look to leverage our best practices, industry leading mining expertise and proven ability to drive improvements and efficiencies whilst improving safety across their entire business. I would like to thank the many Stillwater employees whose hard work has transformed the company into a world-class operator with the assets and team able to deliver value over many future decades."

**Transaction Details**

Under the terms of the merger agreement, a US subsidiary of Sibanye has agreed to acquire all of the outstanding shares of Stillwater for $18.00 per share in cash.

The closing of the transaction is subject to certain conditions, including (1) approval of the merger agreement by the holders of a majority of Stillwater's outstanding shares, (2) approval of the transaction by the holders of a majority of Sibanye's shares present and voting, (3) the approval of the related issuance of shares by Sibanye in a rights offering by the holders of at least 75% of the shares present and voting, (4) expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and CFIUS clearance and the approval South African Reserve Bank, and (5) other customary conditions. The closing of the transaction is not subject to a financing condition.

Sibanye's two largest shareholders, Gold One International Ltd. and Public Investment Corporation Ltd., which in aggregate represent 29% of Sibanye's issued share capital, have confirmed their support of the Transaction. The parties expect the closing to occur in the second quarter of 2017.

Sibanye has secured bridge financing of $2.7 billion provided by Citi and HSBC to fund the transaction consideration and repay certain existing indebtedness of Stillwater. Stillwater is required to pay a break-up fee of $16.5 million and reimburse Sibanye for up to $10 million of expenses in the event the merger agreement is terminated in certain circumstances, including if Stillwater's Board of Directors changes its recommendation in favor of the transaction and in certain other events. Sibanye is required to pay a reverse break-up fee of $33 million and reimburse Stillwater for up to $10 million of expenses in the event the merger agreement is terminated in certain circumstances, including the failure to obtain Sibanye shareholder or certain other approvals.

BofA Merrill Lynch acted as financial advisor to Stillwater, while Jones Day and Holland & Hart acted as legal counsel. Citigroup Global Markets Limited and HBSC Bank plc acted as financial advisors to Sibanye. Qinisele Resources acted as corporate advisor to Sibanye. ENSAfrica served as South African counsel to Sibanye, while Linklaters LLP served as legal counsel to Sibanye in the United States.

### D.    The Proposed Transaction Does Not Provide Adequate Value to Shareholders

41.    As noted above, pursuant to the terms of the Merger Agreement, Stillwater shareholders will receive just $18.00 for each share of Stillwater common stock that they own (previously defined as the "Merger Consideration"). This Merger Consideration is inadequate and undervalues the Company. It fails to adequately value the Company's financial performance and prospects and is well below analyst estimates.

42.    As an initial matter, the Merger Consideration is significantly below the target price of $21.00 set by an analyst at FBR Capital Markets on November 2, 2016.  What is more, in the last three years, Stillwater traded as high as $19.42 on July 30, 2014, and most recently traded above the Merger Consideration – at $18.26 – on September 2, 2014.

43.    What is more, in the year proceeding the announcement of the Merger Agreement, the Company experienced a standalone rally in its stock price, rising from a closing low of $5.29 per share on January 19, 2016 to a closing high of $15.58 on August 1, 2016, organically:

- 11 -



As is apparent, the Company's would have likely reached and surpassed the Merger
Consideration within months on a standalone basis, such that the Merger Consideration now acts
as a ceiling to its growth.

44.    This is no doubt due to the Company's recent positive financial performance.  For
example, on October 28, 2016, Stillwater reported total revenues of $196.6 million for the three
months ended September 30, 2016 - a 16.7% increase from the same period of the prior year.
Stillwater has also beaten analyst estimates for revenue in three of the past four quarters.

45.    In commenting on these results, Defendant McMullen remarked:

The third quarter 2016 results demonstrate that Stillwater Mining Company
continues to deliver on operational plans and stated objectives. Our efforts to
grow the recycling business have been successful as we processed 175,000 ounces
of recycled PGMs during the third quarter of 2016, which was a Company record.
Mined production and costs were in-line with our expectations. Based on our
year-to-date results and future outlook, we remain confident in our ability to
achieve the improved full-year guidance targets provided last quarter.

**E.    The Proposed Transaction Is the Result of a Flawed Process**

46.    As an inducement for entering into the Proposed Transaction, the Director

Defendants have secured for themselves special monetary compensation that is not shared equally with Plaintiff and the Class. For example, and pursuant to the terms of the Merger Agreement, all unvested Company stock options, all unvested performance-based restricted stock unit awards ("RSUs") (except those granted in 2017), and all other unvested non-performance-based RSUs (again, except those granted in 2017), will, at the effective time of the Merger, be cashed out at the Merger Consideration.

47.     As a result of this vesting, members of Stillwater management – including Defendant McMullen and any others responsible for preparing the Stillwater forecasts that were relied upon in the sales process – stand to receive substantial insider benefits that other non-public shareholders will not as a result of the Proposed Transaction. Even worse, and contrary to custom, these benefits have not yet been disclosed to shareholders in the Proxy Statement.

48.     However, according to the Company's most recent 10-K filed with the SEC on February 22, 2016, Defendant McMullen in particular stands to receive approximately $5,277,763 in change-in-control payments upon the consummation of certain transactions like the Proposed Transaction. Further, according to the Company, Defendant McMullen held approximately 229,878 unvested stock awards for the period ending December 31, 2015 – an amount worth as much as $4.1 million upon acceleration under the terms of the Proposed Transaction. And, according to the Company's 8-K filed with the SEC on March 28, 2016, the Director Defendants approved amended grants to certain members of Stillwater management, including a grant of 172,560 RSUs to Defendant McMullen, in exchange for certain grants previously made to such members of management on January 11, 2016.

F.     **The Merger Agreement Contains Onerous Deal Protection Devices**

49.     The Proposed Transaction is also unfair because, as part of the Merger Agreement, the Board agreed to certain onerous and preclusive deal protection devices that

- 13 -

operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no successful competing offers will emerge for the Company.

50.    Despite the unfair price, the Merger Agreement has a number of provisions that make it more difficult for another buyer to purchase the Company, and for the Company to seek out competing offers.  Specifically, if the Company terminates the Proposed Transaction, the Merger Agreement states that the Company must pay Parent a termination fee of $16.5 million, plus reimbursement of expenses up to $10 million.

51.    Additionally, the Merger Agreement contains a strict no-solicitation provision, pursuant to which the Company is prohibited from soliciting competing acquisition proposals or, subject to certain exceptions regarding unsolicited proposals, engaging in discussions or providing information in connection with an alternative acquisition proposal.

52.    The Merger Agreement also contains information rights and matching rights provision that requires the Company to notify Parent of certain unsolicited competing offers, to provide Parent with information regarding such offers, and to negotiate in good faith with Parent regarding any such offers.

53.    These provisions will cumulatively discourage other potential bidders from making a competing bid for the Company.  Similarly, these provisions make it more difficult for the Company and individual shareholders to exercise their rights and to obtain a fair price for the Company's shares.

### G.    **The Defendants Are Withholding Material Information from Shareholders**

54.    Finally, the Director Defendants caused Stillwater to file the Proxy Statement with the SEC in connection with the Proposed Transaction.   As discussed below and elsewhere herein, the Proxy Statement omits material information that must be disclosed to Stillwater's stockholders to enable them to render an informed decision with respect to the Proposed

Transaction.

**1.      The Proxy Statements fail to adequately describe the process that resulted in the Proposed Transaction and the conflicts of interest infecting it**

55.      The Proxy Statement fails to fully and fairly disclose certain material information concerning the Proposed Transaction, including (among other things):

a.   The basis for management's purported belief that "it was likely that the holders of a substantial majority of Stillwater's shares would prefer a transaction involving a substantial cash component at a premium to market sufficient to compensate them for potential loss of equity upside."

b.   Whether Sibanye breached its confidentiality agreement when it "spoke[] with representatives of Sibanye's two largest shareholders regarding the possible transaction on a confidential basis . . . ."

c.   Whether and to what extent post-close employment for Stillwater's management, including Defendant McMullen, was discussed and negotiated during the sales process, and, if so, the details surrounding such discussions.

d.   The amount of compensation Stillwater's management and the remaining Director Defendants stand to receive in connection with the Proposed Transaction.

e.   Whether and to what extent BofA Merrill Lynch has any conflicts of interest, including the nature of prior services BofA Merrill Lynch has performed for the Company.

f.   Whether the confidentiality agreements entered into between Stillwater and potential bidders, including Company B, Company C, and Company D, contained standstill and/or "don't-ask-don't-waive" provisions.

56.      These omissions are material because, without the omitted information,

Stillwater's public stockholders are unable to assess whether the Board maximized stockholder value, whether other bidders may be willing to pay more for the Company, whether the Director Defendants reasonably canvassed the market for potential acquirers of Stillwater, whether the Director Defendants conducted a process that was fair, whether the Director Defendants secured value commensurate with the standalone value of Stillwater, and the conflicts infecting the process that was conducted.

> **2.    The Proxy Statement fails to disclose material facts concerning BofA Merrill Lynch's Fairness Opinion**

57.    The Proxy Statement describes the fairness opinions and the various valuation analyses performed by BofA Merrill Lynch.  However, the description of the opinions and analyses fails to include key inputs and assumptions underlying the analyses. Without this information, Stillwater's stockholders are unable to fully understand or independently evaluate the analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote in connection with the Proposed Transaction.

58.    In connection with BofA Merrill Lynch's *Selected Publicly Traded Companies Company Analysis*, the Proxy Statement fails to disclose:

> a.    the individually observed multiples for each selected company for each metric observed by BofA Merrill Lynch; and
>
> b.    the separate values for Stillwater and Altar Resources reached by BofA Merrill Lynch.

59.    In connection with BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

> a.    the individually observed multiples for each selected transaction for each metric observed by BofA Merrill Lynch; and
>
> b.    the separate values for Stillwater and Altar Resources reached by BofA

Merrill Lynch.

60.     In connection with BofA Merrill Lynch's *Net Asset Value Analysis*, the Proxy Statement fails to disclose:

    a.   the specific inputs and assumptions used to determine the discount range of 11.6% to 14.5%;

    b.   the estimated mine closure liabilities;

    c.   the value of Altar Resources used in the analysis;

    d.   the values for the Stillwater Mine, Blitz project, East Boulder Mine, and Lower East Boulder Project used in the analysis; and

    e.   the market value of the Company's convertible debentures.

**3.     The Proxy Statement fails to disclose material facts concerning the financial projections prepared by the Company's management.**

61.     Finally, the Proxy Statement provides a series of projections, but fails to disclose all of the metrics usually associated with such projections. Specifically, in connection with the financial projections provided by Stillwater's management and relied upon by BofA Merrill Lynch for the purposes of its analyses, the Proxy fails to disclose the following projection line items for the Company for each year of the projection period;

    a.   stock-based compensation;

    b.   the definition of "unlevered free cash flow";

    c.   each of the constituent line items used in the calculation of unlevered free cash flow; and

    d.   all line items actually provided to BofA Merrill Lynch and third party bidders that signed confidentiality agreements.

62.     Finally, the Proxy provides projections for the non-GAAP (Generally Accepted Accounting Principles) metrics life of mine ("LOM") EBITDA and LOM Unlevered Free Cash

Flow, Proxy 35, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile these non-GAAP projections to GAAP, as required by SEC Regulation G, 17 C.F.R. § 244.100.

63.    When a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

64.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Stillwater has included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.   And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

65.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the

use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

66.    In order to make the projections included on page 35 of the Proxy materially complete and not misleading, Defendants must provide either a reconciliation table of the non-GAAP measures to the most comparable GAAP measures, or the line item projections for the metrics used to calculate the non-GAAP measures included in the proxy.

67.    These omissions are material because, without this information, Stillwater's stockholders are unable to fully understand or evaluate the above-referenced financial analyses and projections, and, as a result, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote.

68.    The Proxy is materially incomplete and misleading because it omits the information identified above.

69.    For the reasons detailed herein, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/ 2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. Securities and Exchange Commission (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

## COUNT I

**On Behalf of Plaintiff and the Class Against
Stillwater and the Director Defendants for Violations of Section 14(a)
of the Securities Exchange Act of 1934 and Rule 14a-9 and Regulation G
Promulgated Thereunder**

70.      Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

71.      Defendants have issued the Proxy Statement with the intention of soliciting

stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the process that led to the Proposed Transaction and the key

inputs and assumptions of the financial analyses performed by BofA Merrill Lynch in support of

its fairness opinion.

72.      In so doing, defendants made untrue statements of fact and omitted material facts

necessary to make the statements made not misleading.   Each of the Director Defendants, by

virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).

73.      Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that such communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary

in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

74.      SEC Regulation G has two requirements: (1) a general disclosure requirement;

and (2) a reconciliation requirement.   The general disclosure requirement prohibits "mak[ing]

public a non-GAAP financial measure that, taken together with the information accompanying

that measure, contains an untrue statement of a material fact or *omits to state a material fact*

*necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

75.    As detailed above, Defendants have violated Section 14(a), Rule 14a-9 and Regulation G because they have omitted material facts from the Proxy concerning: (i) certain material information regarding the process leading up to the consummation of the Merger Agreement; (ii) key inputs and assumptions underlying BofA Merrill Lynch's financial analyses; and (iii) the projected financial information relied upon by BofA Merrill Lynch in its financial analyses supporting its fairness opinion.

76.    Moreover, in the exercise of reasonable care, the Director Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Director Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy Statement states that BofA Merrill Lynch reviewed its financial analyses with the Board and that the Board considered the financial analyses provided by BofA Merrill Lynch in its fairness opinion. The Director Defendants knew or should have known that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

77.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations

and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no

adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to

inflict.

## COUNT II

### On Behalf of Plaintiff and the Class Against the Director Defendants
### for Violations of Section 20(a) of the Securities Exchange Act of 1934

78.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

79.     The Director Defendants acted as controlling persons of Stillwater within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Stillwater, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Proxy Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the

content and dissemination of the various statements that Plaintiff contends are false and

misleading.

80.     Each of the Director Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

81.     In particular, each of the Director Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Director Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

82.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Director Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Director Defendants reviewed and considered. The Director Defendants participated in drafting and/or gave their input on the content of those descriptions.

83.     By virtue of the foregoing, the Director Defendants have violated Section 20(a) of the Exchange Act.

84.     As set forth above, the Director Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Director Defendants' conduct, Plaintiff will be irreparably harmed.

85.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until the

Company discloses the material information discussed above which has been omitted from the Proxy;

C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Directing Defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

February 15, 2017      Respectfully submitted,

             */s/ Juan E. Monteverde*
             Juan E. Monteverde
             **MONTEVERDE & ASSOCIATES PC**
             The Empire State Building
             350 Fifth Avenue, 59th Floor
             New York, NY 10118
             Tel: (212) 971-1341
             E-mail: jmonteverde@monteverdelaw.com

             *Attorneys for Plaintiff*

**OF COUNSEL:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
206 Covington Street
Madisonville, LA 70447
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com

*Attorneys for Plaintiff*